**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.:

MICHELLE MARANZANO, an individual,

PLAINTIFF,

v.

ASPEN VALLEY HOSPITAL DISTRICT d/b/a ASPEN VALLEY HOSPITAL,

DEFENDANT.

**VERIFIED COMPLAINT**

Plaintiff, MICHELLE MARANZANO ("Plaintiff" or "Ms. Maranzano"), by and through her undersigned counsel at the law offices of Bryan E. Kuhn, Counselor at Law, P.C., and submits her Verified Complaint against Defendant, ASPEN VALLEY HOSPITAL DISTRICT d/b/a ASPEN VALLEY HOSPITAL ("Defendant" or "Aspen Valley"), alleging as follows:

**INTRODUCTION**

1. This is an action brought against the Defendant pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, as interpreted by 29 C.F.R. § 825, *et seq.*, for interference with and retaliation for her exercise of Ms. Maranzano's rights under the FMLA.

**PARTIES**

2. Ms. Maranzano is an individual who, at all times pertinent to this Complaint, has resided at 4940 Broadmoor Bluff Dr., Colorado Springs, CO, 80906.

3. Defendant is a healthcare district in the State of Colorado, located at 401 Castle Creek Road, Aspen, CO 81611.

## JURISDICTIONAL AND VENUE

4. This Court has jurisdiction over the action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2617(a)(2), because the instant action arises under federal law, specifically FMLA.

5. In addition, this Court has jurisdiction over the Defendant as the complained of unlawful employment practices took place in Colorado and the Defendant maintains substantial, ongoing business operation(s) in this state.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the employment practices and other conduct alleged to be unlawful were committed in the District of Colorado.

7. At all relevant times, Plaintiff was an "employee" set forth in 29 U.S.C. § 2611(2) of the FMLA.

8. At all relevant times, Defendant was covered by the definitions of "employer" set forth in 29 U.S.C. § 2611(2) of the FMLA.

## GENERAL ALLEGATIONS

9. Plaintiff was hired by Defendant in August of 2008 as a travel nurse with a thirteen (13) week contract.

10. Due to Plaintiff's exemplary work, Defendant asked Plaintiff to continue her work for Defendant and extended her contract twice.

11. Throughout her tenure with the company, Plaintiff worked diligently in her position and received many exemplary employee evaluations.

12. Unfortunately, on March 13, 2009, Plaintiff was assaulted by an intoxicated patient who broke free from his bed restraints and punched Plaintiff in the face, then continued his assault until an emergency room doctor and a police officer could restrain him.

13. As a result of the assault, Plaintiff began to suffer from vestibular migraines, vertigo, ringing ears, cervical dystonia, and other symptoms from her broken jaw and traumatic brain injury. Further, Plaintiff had to obtain prism glasses to help mitigate the effects of vertigo and loss of depth perception, as well as braces in order to fix her broken teeth.

14. Plaintiff has been forced to see numerous doctors for a wide range of treatments after this incident, including but not limited to, medication, injections, Botox, acupuncture, and massage therapy.

15. Plaintiff filed a claim with worker's compensation for the incident.

16. On May 1, 2009, Defendant, being fully aware of all Plaintiff's health conditions, hired Plaintiff on to be a full-time employee.

17. Five (5) years later, in June of 2014, Plaintiff was assaulted again, this time by a wildly out of control drunk female patient who became violent after Plaintiff began attempting treatment.

18. As an ER doctor and security were holding the patient down, the patient broke free and kicked Plaintiff in the chest. Plaintiff was knocked backwards, sustaining wrist, neck, and back injuries, as well as whiplash. Plaintiff filed another worker's compensation claim based on her newly sustained injuries.

19. On July 8, 2014, Plaintiff's worker's compensation doctor, Dr. Dewayne Niebur, placed an overhead weight lifting restrictions of three (3) pounds carrying, five (5) pounds repetitive lifting, and five (5) pounds lifting.

20. On July 22, 2014, Plaintiff's restriction was increased to twenty (20) pounds. However, on September 24, 2014, the restriction was decreased back to five (5) pounds.

21. Similarly, on October 14, 2014, Ms. Maranzano's restriction changed to seven (7) pounds pushing and carrying and five (5) pound reaching above shoulders.

22. In the course of her work, Plaintiff handled cardiac monitors, which weighed approximately twenty-three (23) pounds and were mounted on the wall at eye-level.

23. Due to her weight lifting restrictions, Plaintiff was specifically told by her physician to not lift the monitors.

24. Following the issuance of her restrictions, Defendant knowingly allowed Plaintiff to continue to work in spite of the same, and Plaintiff was assisted in her handling of cardiac monitors by other staff members with no objection from Defendant.

25. In July 2015, Plaintiff's father became seriously ill in his battle against bone cancer. In response to her father's illness, Plaintiff applied for leave under the Family Medical Leave Act ("FMLA").

26. Defendant subsequently approved Plaintiff's FMLA leave request on August 15, 2015.

27. Plaintiff used banked paid time off ("PTO") and FMLA leave to travel to Alaska and care for her father on August 13-20 and 28-29, totaling of six (6) shifts, which equates to two (2) weeks' worth of shifts for Plaintiff's typical work schedule.

28. Plaintiff provided Defendant with ample notice of her leave, and her time away to take care of her father was approved.

29. Similarly, Plaintiff used another two (2) weeks of FMLA leave for her father in from November 19-24, 2015, for a total of four (4) weeks used.

30. On December 17, 2015, Plaintiff suddenly became unable to turn her head; her neck locked up and became extremely painful.

31. Plaintiff checked herself into the emergency room on December 18, 2015.

32. Plaintiff received MRI scans and various medications, and was told to three (3) weeks off, and follow up with an orthopedic surgeon on December 31, 2015.

33. Accordingly, Plaintiff was unable to report to work from December 19, 2015 to December 21, 2015.

34. Defendant required Plaintiff to file a second worker's compensation claim for the new injury.

35. However, thereafter, instead of listing the leave as worker's compensation, Defendant switched Plaintiff's FMLA leave from care of a sick parent to Plaintiff's personal condition and continued tracking the time against Ms. Maranzano's FMLA allotment.

36. On December 30, 2015, Shawna Blevins (HRIS and Employee Leave Coordinator) sent Plaintiff an email stating that Plaintiff was scheduled for a follow up appointment on January 11, 2016, and that Plaintiff was expected back at work on January 8, 2016.

37. On December 31, 2015, Plaintiff saw an orthopedic surgeon, Dr. Donald Corenman, who was referred to her by the emergency room doctor[1].

38. Dr. Corenman stated that a lifting restriction of ten (10) pounds was appropriate.

39. On January 11, 2016, Dr. Niebur agreed and changed Plaintiff's lifting restriction to ten (10) pounds.[2]

40. After Plaintiff's appointment on January 11, 2016, Ms. Blevins contacted Plaintiff via email and notified Plaintiff of Defendant's (newly determined) position that Plaintiff could not meet the physical demand requirements of her position due to her "current limitations/restrictions."

41. Accordingly, Defendant was in the process of identifying temporary modified duties.

42. This was the first time that Plaintiff's weight restriction became a concern for Defendant.

43. Throughout those years, despite her ongoing weight restrictions, Plaintiff was never provided with light or modified duties.

44. Similarly, Plaintiff was never offered another position within the hospital that could have been better suited.

45. In addition, based solely on these new concerns, Defendant required Plaintiff to continued using her FMLA time, even though Plaintiff was able to return to work.

---

[1] Ms. Maranzano later learned that the ER doctor wanted to send her for a neurosurgeon consult but sent her to an orthopedic surgeon in Vail by mistake.

[2] Dr. Niebur also stated that he would talk to Ms. Maranzano's supervisor regarding his concerns for her wellbeing working in the ER.

46. Ms. Blevins contacted Plaintiff again on February 11, 2016, stating that Plaintiff's FMLA would expire on February 15, 2016, which was inaccurate.

47. Plaintiff contacted Alicia Miller (HR Director) regarding the matter, requesting paperwork and additional information.

48. Ms. Miller assured Plaintiff that she was permitted twelve (12) weeks of FMLA leave per year, which had not yet been exhausted.

49. On February 18, 2016, Plaintiff received an email from Ms. Miller, inquiring about a recent doctor appointment, and whether Plaintiff had been released by the doctor to return with a higher weight lifting limit.

50. Defendant never provided Plaintiff with temporary modified duties, a return to work date based on modifications, or allowed her to return with her restrictions, but nevertheless terminated Plaintiff on February 26, 2016, for "failure to return to work."

51. Similarly, in effectuating the termination, Defendant stated that Plaintiff had not provided a "return to work" date or a "documented work release," which was inaccurate.

52. Ms. Maranzano was terminated because of her use of FMLA leave and her request to be restored to her position.

**FIRST CLAIM FOR RELIEF**
(*Violations of the Family and Medical Leave Act - Interference*)

53. Plaintiff incorporates by reference paragraphs 1 through 52 as if fully set forth herein.

54. Defendant is a covered employer by the FMLA as it had at least fifty (50) employees or more employed for at least twenty (20) work weeks in the current or preceding calendar year in an employing unit within a seventy-five (75) mile radius.

55. Plaintiff was eligible for FMLA because she had worked for Defendant for twelve (12) months, had a qualifying medical condition, and was employed at a worksite where fifty (50) or more employees were employed within a seventy-five (75) mile radius.

56. Ms. Maranzano was entitled to medical leave for the care and treatment of a family member and her own serious medical condition.

57. Plaintiff provided sufficient notice of her intent to take such leave.

58. When Plaintiff took FMLA leave, Defendant suddenly focused on her weight restrictions, refused to allow her to return to work, refused to clarify the FMLA time remaining available to her, and then terminated her for allegedly "going over" her FMLA time.

59. These actions chilled Plaintiff's willingness to exercise her right as an employee to take leave under the FMLA.

60. Defendant terminated Plaintiff without allowing her to return from leave.

61. Plaintiff was entitled to reinstatement to her prior position or a substantially equivalent position at the conclusion of her leave.

62. Defendant did not restore Plaintiff to her prior position or a substantially equivalent position.

63. Defendant's adverse actions, including terminating Plaintiff, were related to her exercise of Plaintiff's FMLA rights.

64. Defendant's adverse employment actions provided a disincentive and punished Plaintiff for taking FMLA leave.

65. Defendant's action interfered with Plaintiff's right to take FMLA leave, her exercise of her FMLA rights, and her right to return to her job upon completion of FMLA leave.

66. Defendant's actions towards Plaintiff were aimed at preventing her from exercising her FMLA rights.

67. Defendant's actions and omissions were performed willfully and were not done in good faith.

68. Throughout Plaintiff's employment, Defendant knew that interference with an employee's right to FMLA-granted leave was unlawful under the FMLA.

69. As a direct and proximate result, Plaintiff has been damaged in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF
*(Violations of the Family and Medical Leave Act - Retaliation)*

70. Plaintiff incorporates by reference paragraphs 1 through 69 as if fully set forth herein.

71. Defendant is a covered employer by the FMLA as it had at least fifty (50) employees or more employed for at least twenty (20) work weeks in the current or preceding calendar year in an employing unit within a seventy-five (75) mile radius.

72. Plaintiff was eligible for FMLA because she had worked for Defendant for twelve (12) months, had a qualifying medical condition, and was employed at a worksite where fifty (50) or more employees were employed within a seventy-five (75) mile radius.

73. Plaintiff was entitled to leave under the FMLA, and she provided sufficient notice of her intent to take such leave.

74. Plaintiff engaged in protected activity by taking leave under the FMLA.

75. Defendant's adverse actions, including terminating Plaintiff, were related to her exercise of Plaintiff's FMLA rights.

76. There was a causal connection between the protected activity and the adverse employment action.

77. Throughout Plaintiff's employment, Defendant knew that discriminating or retaliating against employees for taking FMLA leave, asserting FMLA rights, or opposing FMLA violations was unlawful under the FMLA.

78. Defendant's actions towards Plaintiff were intentional and willful violations of the FMLA.

79. As a direct and proximate result, Plaintiff has been damaged in an amount to be proven at trial.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for a judgment to be entered in her favor and against Defendant, and Order the following relief:

    a. Back pay in an amount equal to lost compensation and benefits;

    b. Damages for all other monetary losses sustained as a direct result of the violation;

    c. Reinstatement or front pay in lieu thereof;

    d. Liquidated damages equal to the lost wages, salary, and other compensation she is awarded;

    e. Pre-judgment and post-judgment interest at the highest lawful rate;

    f. Attorney fees and costs of this action, including expert witness fees, as available by law; and,

    g. Any such further relief allowable by law or as justice requires.

## JURY DEMAND

The Plaintiff hereby demands a trial by jury of all issues so triable in the above said matter.

Respectfully submitted this 26th day of February, 2018.

        BRYAN E. KUHN, COUNSELOR AT LAW, P.C.

*Original pleading bearing original signature maintained in the offices of Bryan E. Kuhn, Counselor at law, P.C.*

s/ *Kate W. Beckman*
Kate W. Beckman, Esq. #42416
1660 Lincoln Street, Suite 2330
Denver, Colorado 80264
(p) (303)424-4286 (f) (303)425-4013
Kate.Beckman@beklegal.com
ATTORNEYS FOR PLAINTIFF